Richard B. Drubel*
rdrubel@bsfllp.com
Jonathan R. Voegele*
jvoegele@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
26 South Main Street
Hanover, NH 03755
Telephone: (603) 643-9090
Facsimile: (603) 643-9010

R. Bryant McCulley*                          John Kristensen (SBN 224132)
bmcculley@mcculleymccluer.com                john@kristensenlaw.com
Stuart H. McCluer*                           KRISTENSEN WEISBERG, LLP
smccluer@mcculleymccluer.com                 12304 Santa Monica Blvd., Suite 100
MCCULLEY MCCLUER PLLC                         Los Angeles, CA 90025
2113 Middle Street, Suite 208                Telephone: (310) 507-7924
Sullivans Island, SC 29482                   Facsimile: (310) 507-7906
Telephone: (855) 467-0451
Facsimile: (622) 368-1506

Brent Hazzard*                               Amy L. Marino*
brent.hazzard@hazzardlaw.net                 amarino@sommerspc.com
HAZZARD LAW, LLC                             SOMMERS SCHWARZ, P.C.
P.O. Box 24382                               One Towne Square, 17th Floor
Jackson, MS 39225                            Southfield, MI 48076
Telephone: (601) 977-5253                    Telephone: (248) 266-2536
Facsimile: (601) 977-5236                    Facsimile: (248) 436-8453

*Attorneys for Plaintiffs*                   *Pro hac vice* pending.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MELISSA TEISL, SUSAN TEISL, VERONICA STEWART, MICHAEL CUNNINGHAM, and ERIK BOONE, on Behalf of Themselves and All Others Similarly Situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TAKATA CORPORATION; TK HOLDINGS, INC.; HIGHLAND INDUSTRIES, INC.; HONDA MOTOR CO., LTD.; AMERICAN HONDA MOTOR CO., INC., | |
| Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

JURISDICTION AND VENUE ................................................................. 1

NATURE OF THE CASE ....................................................................... 2

PARTIES ............................................................................................... 5

FACTUAL ALLEGATIONS ................................................................. 11

    Takata Is a Major Manufacturer of Airbags and Airbag Inflators ............... 11

    Takata's Secret Testing Confirms the Existence of a Serious Problem ........ 13

    Honda Is Alerted to Additional Incidents in 2007 but Takes No
    Corrective Action ................................................................................. 15

    2008: Recall 08V-593 ........................................................................... 15

    Takata Airbags Continue to Cause Serious Injury and Death ..................... 16

    2009: Recall 09V-259 ........................................................................... 17

    Takata's Contact with NHTSA ............................................................. 19

    2010: Recall 10V-041 ........................................................................... 21

    2011: Recall 11V-260 ........................................................................... 21

    2013: Recall 13V-132 ........................................................................... 21

    Recalls Fail to Prevent Additional Serious Injuries and Deaths ................. 24

    Recalls and Notices Relating to Defective Airbag Inflators in Non-
    Honda Vehicles .................................................................................... 25

    Takata Has Failed to Identify the Cause of the Airbag Defects and
    Failed to Meet Safety Standards ............................................................ 27

    Takata Destroyed Evidence That Its Airbags Were Defective and
    Continued to Manufacture Defective Airbags Until at Least 2009 ............. 28

    Federal Investigations .......................................................................... 30

i

1

2
3

Defendants Have Failed to Provide Owners and Lessees of Defective
Vehicles with Safe Replacement Parts or Vehicles ...................................... 35

4

TOLLING OF STATUTES OF LIMITATIONS ........................................... 37

5

Fraudulent Concealment ...................................................................... 37

6
7

Equitable Estoppel ............................................................................... 37

8

Equitable Tolling or Discovery Rule .................................................. 38

9

CLASS ACTION ALLEGATIONS .............................................................. 38

10

CAUSES OF ACTION ................................................................................. 42

11

12
13

FIRST CAUSE OF ACTION .............................................................. 42
(Violation of the Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301–12)

14

15
16

SECOND CAUSE OF ACTION .......................................................... 46
(Violation of the California Consumer Legal Remedies Act,
Cal. Civ. Code §§ 1750–85)

17
18

THIRD CAUSE OF ACTION .............................................................. 53
(Violations of the California Unfair Competition Law,
Cal. Bus. & Prof. Code §§ 17200–10)

19

20
21

FOURTH CAUSE OF ACTION ........................................................... 57
Violation of the California False Advertising Law,
Cal. Bus. & Prof. Code §§ 17500–09)

22
23

FIFTH CAUSE OF ACTION ............................................................... 58
(Fraud by Concealment)

24
25

SIXTH CAUSE OF ACTION ............................................................... 59
(Negligent Failure to Recall)

26
27

SEVENTH CAUSE OF ACTION ......................................................... 60
(Unjust Enrichment)

28

EIGHTH CAUSE OF ACTION ............................................................ 61
(Violation of the Michigan Consumer Protection Act,
Mich. Comp. Laws §§ 445.901–.922)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRAYER FOR RELIEF ........................................................................ 64

DEMAND FOR JURY TRIAL .............................................................. 67

Plaintiffs Melissa Teisl, Susan Teisl, Veronica Stewart, Michael Cunningham, and Erik Boone, on behalf of themselves and all others similarly situated, bring this action and allege as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction is proper in this Court under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because at least one Plaintiff or member of the proposed Class is a citizen of a state different from at least one Defendant, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

2.      This Court has personal jurisdiction over Plaintiffs because Plaintiffs submit to the Court's jurisdiction.  This Court has personal jurisdiction over Defendants because they conduct substantial business in this District, some of the actions giving rise to this action took place in this District, and some of Plaintiffs' claims arise out of Defendants (a) operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; (b) committing a tortious act in this state; and (c) causing injury to property in this state arising out of Defendants' acts and omissions outside this state and, at or about the time of such injuries Defendants were engaged in solicitation or service activities within this state, or products, materials, or things processed, serviced, or manufactured by Defendants anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.

3.      Venue is proper in this Court under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to these claims occurred in this District, Defendants have caused harm to Class members residing in this District, and Defendants are residents of this District under 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this District.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NATURE OF THE CASE

4.      This is a case involving airbags that sometimes explode and spray shrapnel inside cars, resulting in serious injury or death to persons inside the car. Neither the airbag manufacturer, Defendants Takata Corporation, and its U.S. subsidiaries TK Holdings Inc., and Highland Industries, Inc. (collectively "Takata"), which has known of the problem for over a decade, nor the vehicle manufacturer, Honda Motor Co., Ltd., and its U.S. subsidiary, American Honda Motor Co., Inc. (collectively "Honda"), which has installed Takata airbags in over 5.5 million vehicles in the United States, apparently know why Takata's airbags sometimes explode.

5.      Purchasers and lessees of motor vehicles expect to receive, at a minimum, vehicles that are safe to drive.  Airbags are important safety devices and are included in virtually every car sold in the United States.  In a collision, a properly functioning airbag reduces injuries to drivers and passengers and saves lives.  But instead of protecting drivers and passengers from injury and death, airbags designed, manufactured, and sold by Takata sometimes explode and spray shrapnel inside the car, causing serious injury and death to drivers or passengers. Moreover, Takata had reason to know that its airbags posed risks of serious physical injury as early as 2001.  Nonetheless, Takata ignored its own safety testing and protocols and continued to manufacture and sell its dangerous and defective airbags.

6.      To date, more than 14 million cars in the United States with Takata airbags have been recalled.  Among those are over 5 million cars manufactured and sold by Honda.  Honda knew that Takata's airbags were dangerous and defective as early as 2004 but continued to install Takata airbags in vehicles it sold to consumers throughout the United States.

7.      Despite knowing the grave danger that Takata's exploding airbags posed to consumers, Takata and Honda both concealed their knowledge of the

2

dangerous airbag defects from government regulators and the public.  For example, following an explosion in one of its airbags in Alabama in 2004, Takata conducted secret tests outside of normal working hours on its airbags which revealed dangerous conditions that could cause the airbags to explode and spray shrapnel.  Although Takata's engineers were startled by the results and began designing possible fixes in preparation for a recall, Takata executives shut down this project and ordered the employees to destroy all evidence of the tests and their results.  Takata has at various times suggested that its exploding airbags were the result of certain manufacturing problems or "high humidity," ignoring reports of airbag explosions in Oklahoma, Arizona, and northern California.  The fact is, as of the filing of this Complaint, neither Takata nor Honda has identified the root cause of why Takata's airbags sometimes explode and therefore how this defect can be corrected.

8.     In testimony on December 3, 2014 before the U.S. House Energy and Commerce subcommittee on Commerce, Manufacturing and Trade, Takata's Senior Vice President for Global Quality Assurance, Hiroshi Shimizu, admitted that "we don't have the exact root cause" of the exploding airbags.[1]  At the same hearing, Rick Schostek, Executive Vice President of Honda North America, Inc., confirmed that: "To date Takata has not identified a cause for the ruptures . . . ."[2]

---

[1] Takata Airbag Ruptures and Recalls: Hearing Before the Subcomm. on Commerce, Mfg., & Trade of the H. Comm. on Energy & Commerce, 113th Cong. (2014) (testimony of Hiroshi Shimizu, Senior Vice President for Global Quality Assurance, Takata Corp.), *available at* http://energycommerce.house.gov/hearing/takata-airbag-ruptures-and-recalls (last visited Dec. 3, 2014).

[2] Takata Airbag Ruptures and Recalls: Hearing Before the Subcomm. on Commerce, Mfg., & Trade of the H. Comm. on Energy & Commerce, 113th Cong. (2014) (statement of Rick Schostek, Executive Vice President of Honda N. Am., Inc.), *available at* http://docs.house.gov/meetings/IF/IF17/20141203/102776/HHRG-113-IF17-

3

Mr. Shimizu also testified that the propellant in Takata's exploding airbags, ammonium nitrate, is the same propellant used in its replacement airbags.[3]  An independent explosives expert has stated that ammonium nitrate should not be used in airbags due to its propensity to break down with repeated temperature changes, causing it to burn more quickly and forcefully than intended. Accordingly, there is no reason to believe that Takata's replacement airbags will be any safer than the originals.

9.     Since problems with Takata's exploding airbags first surfaced, Defendants' primary concern has been to attempt to minimize the risks involved and to keep recalls as limited as possible.  Thus, Takata sought to limit recalls to Florida, Hawaii, Puerto Rico, and the U.S. Virgin Islands while Honda restricted its recall to a limited number of "high humidity" states, all without providing any explanation of the root cause of why the airbags were exploding and how that was being caused by "humidity."  Ultimately, on December 3, 2014, Honda belatedly announced a nationwide recall of its vehicles with defective and dangerous Takata driver-side airbags.  Takata still refuses to admit that there is a nationwide safety defect.

10.     Plaintiffs bring this action on behalf of themselves and all persons similarly situated who purchased or leased any Defective Vehicle, as defined below, which was manufactured, distributed, or sold by Honda containing an airbag manufactured by Takata.  All purchasers and lessees of Defective Vehicles overpaid for them.  An unsafe, defective vehicle is worth less than a safe, non-defective one.  Overpayment for a defective, unsafe vehicle constitutes economic loss to Plaintiffs, as well as, *inter alia*, breach of warranty and diminution in value.  Plaintiffs seek damages, including punitive damages, equitable and

---

Wstate-SchostekR-20141203.pdf (last visited Dec. 3, 2014).

[3] Testimony of Hiroshi Shimizu, *supra* note 1.

4

declaratory relief, and all other just relief as may be applicable under federal and state law.

11.    "Defective Vehicles" refers to Honda-manufactured vehicles with Takata airbags which have been subject to an airbag-related warning or recall, including, but not limited to, the following: 2001-2007 Honda Accord; 2001-2005 Honda Civic; 2002-2006 Honda CR-V; 2003-2011 Honda Element; 2002-2004 Honda Odyssey; 2003-2007 Honda Pilot; 2006 Honda Ridgeline; 2003-2006 Acura MDX; 2002-2003 Acura TL/CL; and 2005 Acura RL.  The term "Defective Vehicles" also includes all Honda-manufactured vehicles with Takata airbags that become subject to an airbag-related warning or recall at any time.

## PARTIES

### Plaintiffs

12.    Plaintiff and proposed Class representative Melissa Teisl is a resident and citizen of California.  Ms. Teisl purchased her 2007 Honda Element at Hoehn Honda in Carlsbad, California in 2007 for approximately $21,000.  Ms. Teisl needs her vehicle to drive her son to and from work and also uses the vehicle primarily for her personal use.  She depends on the vehicle as there is no adequate public transportation in the vicinity of her home and business.  Ms. Teisl did not know at the time of her purchase that her vehicle contained a defective and dangerous Takata airbag.  The purported safety benefits of the 2007 Honda Element were a substantial factor contributing to her decision to purchase the automobile.  Although her vehicle has a defective and dangerous Takata airbag, she has not received a recall notice.  As a result of the exploding Takata airbags, Ms. Teisl is concerned for the safety of her son and herself when she drives the Element.  Ms. Teisl believes that these defects have substantially damaged the value of her car.

13.    Plaintiff and proposed Class representative Susan Teisl is a resident and citizen of California.  Mrs. Teisl purchased her 2007 Honda Pilot at Hoehn

Honda in Carlsbad, California in approximately 2011-2012 for approximately $19,000. The prior owner also purchased the vehicle at Hoehn Honda, and Honda certified it as meeting the manufacturer's safety requirements when Mrs. Teisl purchased the vehicle. Mrs. Teisl needs her vehicle to drive her husband, Steven, who suffered a debilitating stroke. Mrs. Teisl is the 24-hour caregiver of her husband, and the vehicle is necessary for his medical care. Mrs. Teisl did not know at the time of her purchase that her vehicle contained a defective and dangerous Takata airbag. The purported safety benefits of the 2007 Honda Pilot were a substantial factor contributing to her decision to purchase the automobile. Although her vehicle has a defective and dangerous Takata airbag, Mrs. Teisl has not received a recall notice. As a result of the exploding Takata airbags, Mrs. Teisl is concerned for the safety of her husband and herself when she drives the Pilot. Mrs. Teisl believes that these defects have substantially damaged the value of her car.

14. Melissa Teisl is the daughter of Susan Teisl, and they are referred to collectively as "California Plaintiffs."

15. Plaintiff and proposed Class representative Veronica Stewart is a resident and citizen of Michigan. Ms. Stewart purchased her 2004 Honda Civic at Victory Honda of Plymouth in Plymouth, Michigan on or about February 24, 2007 for approximately $16,785. Ms. Stewart needs her vehicle because it is her daughter's only means of transportation to and from college. Ms. Stewart's daughter also relies on the vehicle for transportation to medical appointments, work, and other basic needs. Ms. Stewart did not know at the time of her purchase that her vehicle contained a defective and dangerous Takata airbag. The purported safety benefits of the 2004 Honda Civic were a substantial factor contributing to her decision to purchase the automobile. Although her vehicle has a defective and dangerous Takata airbag, she has not received a recall notice. As a result of the exploding Takata airbags, Ms. Stewart is concerned for the safety

6

of her daughter.  Ms. Stewart believes that these defects have substantially damaged the value of her car.

16.     Plaintiff and proposed Class representative Michael Cunningham is a resident and citizen of Michigan.  Mr. Cunningham purchased his Certified Pre-Owned 2003 Acura 3.2 TL at Suburban Acura dealership in Farmington Hills, Michigan in 2007 for approximately $16,000.  Mr. Cunningham needs his vehicle because it is his son's only means of transportation to and from college.  Mr. Cunningham's son also relies on the vehicle for transportation to Army National Guard drills, appointments, and other basic needs.  Additionally, Mr. Cunningham relies on the vehicle for his basic needs when his son is home from college.  Mr. Cunningham did not know at the time of his purchase that his vehicle contained a defective and dangerous Takata airbag.  The purported safety benefits of the 2003 Acura 3.2 TL were a substantial factor contributing to his decision to purchase the automobile.  Although his vehicle has a defective and dangerous Takata airbag, he has not received a recall notice.  Indeed, Mr. Cunningham contacted the dealership where he purchased his car to inquire about the recall.  The dealer told Mr. Cunningham that Acura was still deciding how to handle the recall and gave no estimate of when such a decision would be made.  The dealer did not offer a loaner vehicle in the meantime.  As a result of the exploding Takata airbags, Mr. Cunningham is concerned for his and his son's safety when he and his son drive the Acura.  Mr. Cunningham believes that these defects have substantially damaged the value of his car.

17.     Plaintiff and proposed Class representative Erik Boone is a resident and citizen of Michigan.  Mr. Boone purchased his 2004 Honda Pilot from a dealership on or about March or April 2014, for approximately $9,000.  Mr. Boone needs his vehicle for transportation to and from college classes, and his wife uses it for transportation to work.  Mr. Boone also uses the vehicle for family trips as well as for his family's basic needs, like family medical appointments.

7

However, after learning of the defect, Mr. Boone avoids driving the car if he can—especially if his children will be passengers. Mr. Boone did not know at the time of his purchase that his vehicle contained a defective and dangerous Takata airbag. The purported safety benefits of the 2004 Honda Pilot were a substantial factor contributing to his decision to purchase the automobile. Although his vehicle has a defective and dangerous Takata airbag, he has not received a recall notice. Mr. Boone is concerned for his and his family's safety when they are in the Pilot. Mr. Boone believes that these defects have substantially damaged the value of his car.

18.    Ms. Stewart, Mr. Cunningham, and Mr. Boone are referred to collectively as "Michigan Plaintiffs."

**Defendants**

19.    Defendant Takata Corporation is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Takata is a specialized supplier of automotive safety systems and designs, manufactures, tests, markets, distributes, and sells airbags. Takata is a vertically integrated company and manufactures component parts in its own facilities.

20.    Defendant TK Holdings Inc. ("TK Holdings") is a subsidiary of Takata Corporation and is headquartered in Auburn Hills, Michigan. TK Holdings sells, designs, manufactures, tests, markets, and distributes airbags in the United States. TK Holdings, both directly and through subsidiaries, owns and operates 56 manufacturing plants in 20 countries, including the United States. TK Holdings manufactures airbags in the United States, including airbags at issue in this litigation.

21.    Highland Industries, Inc. ("Highland") is a subsidiary of Takata Corporation and is headquartered in Greensboro, North Carolina. Highland manufactures industrial and automotive textile product solutions, including airbag

8

fabrics for the automotive airbag industry. Highland manufactures airbags in the United States, including airbags at issue in this litigation.

22. Takata manufactured all of the faulty, recalled airbags that are the subject of this Complaint.

23. Defendant Honda Motor Co., Ltd. ("Honda Motor") is a foreign for-profit corporation with its principal place of business in Tokyo, Japan. Honda Motor manufactures and sells motorcycles, automobiles, and power products through independent retail dealers, outlets, and authorized dealerships primarily in Japan, North America, Europe, and Asia.

24. Defendant American Honda Motor Co., Inc. ("American Honda") is a subsidiary of Honda Motor headquartered in Torrance, California. American Honda conducts the sales, marketing, and operational activities for Honda cars, trucks, sport utility vehicles, and automobile parts in the United States. American Honda manufactures and assembles its vehicles for sale in the United States in automobile plants located in Greensburg, Indiana; East Liberty, Ohio; Lincoln, Alabama; and Marysville, Ohio. American Honda makes substantial decisions in the reporting and submitting of quarterly Early Warning Reports pursuant to 49 C.F.R. § 479.21 on behalf of itself and its parent company Honda Motor.

25. During the relevant period, Defendants conducted substantial business in this state.

26. Defendant Honda Motor has at least the following facilities in California: U.S. Corporate Headquarters, U.S. Sales and Marketing, Automobile Customer Service, the Advanced Styling Center, three Parts Centers, and the Research and Development Test Track.

27. Plaintiffs' claims arise out of conduct that occurred at American Honda's corporate headquarters in Torrance, California.

28. On information and belief, Defendant American Honda failed to disclose the existence of the Takata airbag defects.

9

29.    On information and belief, Defendant American Honda's customer communications personnel are located at its California headquarters, and the decision to conceal the Takata airbag defects from consumers was made and carried out, at least in part, there.

30.    On information and belief, during the relevant period, Defendant American Honda's personnel who managed the distribution of replacement parts to dealerships were located at the California headquarters.

31.    On information and belief, Defendant American Honda's customer service division, and its managing personnel, were and are located in Torrance, California.  The Honda Customer Service website instructs customers to call or fax landlines in Torrance, California (Call: 1-800-999-1009 and Fax: 310-783-3023) and to mail correspondence to American Honda Motor Co., Inc., Honda Automobile Customer Service, Mail Stop: 500 - 2N - 7A, 1919 Torrance Boulevard, Torrance, CA 90501-2746.[4]  In addition, American Honda personnel in Torrance, California, tweet via Twitter ("@HondaCustSvc") with customers about Honda vehicles and services.

32.    On information and belief, Honda personnel in California designed and prepared advertising and marketing campaigns that falsely advertised the Defective Vehicles as safe.

33.    On information and belief, Defendant American Honda's personnel charged with communicating with dealers about Defective Vehicle problems were employed at American Honda's California headquarters.

34.    On information and belief, Defendant American Honda's key personnel charged with providing accurate Early Warning Reports regarding

---

[4] Customer Service—Official Honda Web Site, http://automobiles.honda.com/information/customer-relations.aspx (last visited Dec. 2, 2014).

10

injury, death, and property claims to National Highway Traffic Safety Administration ("NHTSA") pursuant to the Safety Act and the TREAD Act and specifically 49 C.F.R. § 479.21 were employed at American Honda's California headquarters.

35.     On information and belief, Defendant American Honda has a more significant presence in California than any other state, and California has a substantial interest in applying its consumer protection laws to Defendants and their wrongful course of conduct.  California's interests would be thwarted if it were not able to apply its consumer protection laws to Defendants and their wrongful course of conduct.

36.     Honda manufactured and sold vehicles in the United States containing dangerous and defective airbags manufactured by Takata.

## FACTUAL ALLEGATIONS

### Takata Is a Major Manufacturer of Airbags and Airbag Inflators

37.     Takata is the world's second largest manufacturer of automotive safety devices, including airbags.  Takata was a pioneer in developing driver-side airbags, being the first to market driver-side airbags in the early 1980s.  Takata has supplied airbags to U.S. consumers and to state and local governmental purchasers since at least 1983.

38.     Airbags constituted 37.3% of Takata's automotive safety products business in 2007.

39.     Takata also develops other safety technologies, including cushions and inflators, which are components of Takata-manufactured airbags.

40.     The airbags at issue in this case were developed by Takata in the late 1990s in an effort to make airbags more compact and to reduce the toxic fumes that earlier airbag models emitted when deployed.  The redesigned airbags are inflated by means of an explosive, which is based on a common compound used in fertilizer, encased in a metal canister.

11

41.     The two Takata plants that manufactured the airbags at issue in this Complaint are located in Moses Lake, Washington and Monclova, Mexico. Those plants also manufacture airbag inflators.

42.     Airbags manufactured by Takata, including the airbags at issue in this case, have been installed in vehicles manufactured by at least 10 different automakers, including Honda.

43.     Takata Corporation has, since at least 2007, claimed to prioritize driver safety as its "dream."  Based on that "dream," it has claimed to be "motivated by the preciousness of life" and has pledged to "communicate openly and effectively."[5]

44.     Takata has failed to live up to the promise of its self-described "dream" by manufacturing, distributing, and selling airbags that can cause serious bodily injury and death.

45.     One contributing factor to Takata's exploding airbags may be Takata's decision to switch to a new, cheaper propellant in 2001.[6]  By 2001, Takata had opted against reliable and effective compounds for inflating airbags in favor of ammonium nitrate, a compound that degrades over time, is highly sensitive to temperature changes and moisture, and can combust violently.  For example, when exposed to repeated temperature changes, ammonium nitrate breaks down into different crystallized forms that explode and burn much more quickly and forcefully than intended.  One explosives expert has stated that ammonium nitrate

---

[5] Takata Corporation, Investors Meeting Presentation, Investment Highlights FY2007, at slide 2, *available at* http://www.takata.com/ir/pdf/material03/0703Investors.pdf (last visited Dec. 2, 2014).

[6] Hiroko Tabuchi, *Takata's Switch to Cheaper Airbag Propellant Is at Center of Crisis*, N.Y. Times, Nov. 19, 2014, *available at* http://www.nytimes.com/2014/11/20/business/takatas-switch-to-cheaper-airbag-propellant-is-at-center-of-crisis.html (last visited Dec. 2, 2014).

"shouldn't be used in airbags," and is instead "more suitable for large demolitions in mining and construction."[7]  Timothy McVeigh used ammonium nitrate to blow up the Alfred P. Murrah Federal Building in Oklahoma City, Oklahoma in 1995.

### Takata's Secret Testing Confirms the Existence of a Serious Problem

46.     The defect in Takata's airbags dates back to at least June 2000. According to an Isuzu Part 573 Defect and Noncompliance Notice dated February 20, 2001, some Takata airbags suffered from manufacturing defects.  The Notice stated the defect was present in a 2001 Honda Passport.  (Isuzu and Honda shared dealership distribution networks.)  According to the Notice, the defective airbags were built with "too much generant" and "[i]n the event of a crash, the abnormal amount of generant could cause the airbag to burst" such that "[o]ccupants could be injured either as a result of the debris or as a result of crash forces not counteracted by the air bag."[8]  Takata claimed, at the time, that it "had produced air bag units with incorrectly manufactured inflators."[9]

47.     Takata has known about the defects in its airbags, and particularly the inflator component defects, since at least 2001, when Isuzu was forced to make a recall that year due to exploding Takata airbags.

48.     In 2004, a Takata airbag in a Honda Accord violently exploded in Alabama, shooting out metal fragments and injuring the car's driver.  Honda and Takata deemed the incident "an anomaly" and did not issue a recall or seek the involvement of federal safety regulators.[10]  In fact, Honda did not tell regulators

---

[7] *Id.*

[8] Letter from Hironobu Kuga, Rep., Emissions & Safety, Isuzu Motors Am., Inc., to Kenneth N. Weinstein, Assoc. Adm'r for Safety Assurance, NHTSA (Feb. 20, 2001), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM4429302/RCDNN-01V055-4791.PDF (last visited Dec. 2, 2014).

[9] *Id.*

[10] Hiroko Tabuchi, *Takata Saw and Hid Risk in Airbags in 2004, Former Workers*

13

about this event until five years later, in connection with an inquiry into a recall in 2009.

49.     Alarmed by the incident, "Takata secretly conducted tests on 50 airbags it retrieved from scrapyards, according to two former employees involved in the tests, one of whom was a senior member of its testing lab."[11]  The secret tests "were performed after normal work hours and on weekends and holidays during summer 2004 at Takata's American headquarters in Auburn Hills, [Michigan.]"[12]  The tests "were supervised by Al Bernat, then Takata's vice president for engineering . . . and were unknown to all but a small group of people[] that included lab technicians, fabricators[,] and engineers."[13]

50.     "The steel inflaters in two of the airbags cracked during the tests, a condition that can lead to rupture, the former employees said."  Additionally, "[t]he result was so startling that engineers began designing possible fixes in preparation for a recall[.]"[14]  Instead of alerting federal safety regulators to the danger, "Takata executives discounted the results and ordered the lab technicians to delete the testing data from their computers and dispose of the airbag inflaters in the trash[.]"[15]

51.     These secret tests occurred "four years before Takata, in regulatory filings, says that it first tested the problematic airbags.  The results from the later tests led to the first recall over airbag rupture risks in November 2008."[16]

---

*Say*, N.Y. Times, Nov. 6, 2014, *available at* http://www.nytimes.com/2014/11/07/business/airbag-maker-takata-is-said-to-have-conducted-secret-tests.html?_r=0 (last visited Dec. 2, 2014).

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

**Honda Is Alerted to Additional Incidents in 2007**
**but Takes No Corrective Action**

52.    In June and August of 2007, Honda received reports of three additional airbag explosion incidents.  All three involved defective airbags driving metal fragments into the faces and limbs of car passengers upon deployment of Takata airbags.  Those incidents triggered another internal investigation by Takata and Honda, including a survey of inflators.

53.    Like with the 2004 incident in Alabama, Honda settled claims with the individuals injured by those airbags.  But rather than investigate fully, or disclose the fact of those airbag-related injuries, Honda kept the settlements confidential.

54.    Honda filed a standard report with federal safety regulators about the initial incident in 2004, and followed up with similar filings about the incidents in 2007.  Inexplicably, Honda did not issue any recalls and never informed safety regulators of the most critical detail of these incidents: that they involved exploding airbags that posed a substantial risk of serious injury and death to drivers and passengers.

**2008: Recall 08V-593**

55.    Takata shared the results of the inflator survey analysis with Honda in November of 2008.  That analysis indicated there was a problem with Takata's airbag inflator.

56.    Based on those results, Honda informed U.S. safety regulators that certain Takata airbags installed in its vehicles were defective.  Honda also issued a recall, but for only about 4,200 of its vehicles.  That recall occurred over four years after the first airbag explosion incident in a Honda vehicle in 2004.

57.    The November 2008 recall, which involved certain 2001 Honda Accord and Civic vehicles, was to replace airbags that "could produce excessive internal pressure," causing "the inflator to rupture," spraying metal fragments through the airbag cushion and "possibly causing injury to vehicle occupants"

("2008 Recall").[17]   Honda reported that it learned of the problem as a result of a claim in June 2007.

**Takata Airbags Continue to Cause Serious Injury and Death**

58.     In April 2009, five months after the limited 2008 recall, a Takata airbag in Jennifer Griffin's 2001 Honda Civic exploded after a minor accident in Florida.  The explosion sent a two-inch piece of shrapnel from the airbag flying into Ms. Griffin's neck.  Although Ms. Griffin survived, when highway troopers found her, blood was gushing from her neck.  Ms. Griffin's car was not part of the 2008 recall.

59.     In May 2009, a month after Ms. Griffin's accident, Ashley Parham was killed while driving a 2001 Honda Accord in Oklahoma when the Takata airbag exploded after her car bumped into another car in a parking lot.  Ms. Parham was not killed by the impact, but by metal shrapnel that shot out of the exploding Takata airbag which sliced open her carotid artery, causing her to bleed to death.  Ms. Parham's vehicle was not part of the 2008 recall.

60.     On Christmas Eve 2009, Gurjit Rathore was killed when the airbag in her 2001 Honda Accord exploded when she collided with a mail truck in Richmond, Virginia.  The Takata airbag in her car shot shrapnel into her neck and chest, and she bled to death in front of her three children.

---

[17] Letter from William R. Willen, Managing Counsel, Am. Honda Motor Co., Inc. to Daniel C. Smith, Assoc. Adm'r for Enforcement, NHTSA (Nov. 11, 2008), *available* at http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM10641506/RCDNN-08V593-1511.pdf (last visited Dec. 2, 2014).

**2009: Recall 09V-259**

61.     In June 2009, Takata provided a follow up report to Honda on its November 2008 analysis, stating that issues related to propellant production appeared to have caused the improper inflator performance.

62.     Honda subsequently received two more claims of "unusual deployments," Ms. Parham's May 28, 2009 accident and another on June 9, 2009.[18]

63.     As a result of Takata's June 2009 supplemental report and the additional claims of "unusual deployments," on June 30, 2009, Honda expanded its recall to 440,000 vehicles, which included 2001 and 2002 Civic, Accord, and Acura vehicles ("2009 Recall").

64.     In August 2009, the NHTSA Recall Management Division sent Honda an information request to explain why it did not include 2009 Recall vehicles in the 2008 Recall, and "to evaluate the timeliness of [Honda's] recent defect decision."[19]

65.     NHTSA also inquired about "the difference between the driver's airbag inflators in those vehicles from the inflators in the 09V-259 vehicles" and asked Honda to "explain how this distinction, or any other between the two sets of

---

[18] *See* Letter from William R. Willen, Managing Counsel, Am. Honda Motor Co., Inc., to Daniel C. Smith, Assoc. Adm'r for Enforcement (July 29, 2009), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM12254242/RCDNN-09V259-6845.pdf (last visited Dec. 2, 2014).

[19] Letter from George Person, Chief, Recall Mgmt. Div., NHTSA, to William R. Willen, Managing Counsel, Am. Honda Motor Co., at 1 (Aug. 19, 2009), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM12173915/RCNOC-09V259-2862.pdf (last visited Dec. 2, 2014).

17

vehicles, convinced [Honda] at the time that it did not need to include the latter set in the 08V-593 recall population."[20]

66.    The NHTSA Recall Management Division further requested that Honda provide complaints, lawsuits, warranty claims, and field reports, along with an explanation of the "unusual deployments" and Honda's investigative efforts.[21]

67.    In Honda's September 2009 reply to NHTSA, the automaker said that its information about the "unusual deployments" came from Takata: "[W]e understood the causal factors to be related to airbag propellant due to handling of the propellant during airbag inflator module assembly."[22]

68.    Honda also reported, based on information from Takata, that the problem with the airbags was isolated to the "production of the airbag propellant prior to assembly of the inflators."[23]  Specifically, Honda claimed that the cause was "related to the process of pressing the propellant into wafers that were later installed into the inflator modules," and was limited to "one production process involving one of several high-precision compression presses that were used to form the propellant into wafers."[24]

69.    Honda also disclosed to NHTSA that it had received nine complaints and been subject to one lawsuit related to the 2008 and 2009 Recalls.  Honda also, for the first time, told NHTSA about the 2004 incident involving an "unusual

[20] *Id.* at 1-2.

[21] *Id.* at 2.

[22] Letter from William R. Willen, Managing Counsel, Am. Honda Motor Co., Inc., to George Person, Chief, Recall Mgmt. Div., NHTSA, at 1 (Sept. 16, 2009), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM12339484/RCMR-09V259-4253.pdf (last visited Dec. 2, 2014).

[23] *Id.*

[24] *Id.*

deployment" of the vehicle airbag.  Honda claimed that it "only recently [was] reminded of this incident," and that, until recently, it "had not associated it with the [2008 Recall] campaign."[25]

70.     At least four complaints have been submitted to NHTSA by Honda vehicle operators reporting defective airbag deployments that have released metal shards into the cabin of the Honda vehicle.

## Takata's Contact with NHTSA

71.     On November 20, 2009, NHTSA requested information from Takata as part of its ongoing investigation into the airbag inflators that triggered the 2009 Recall.

72.     Takata submitted a partial response to NHTSA on December 23, 2009 ("Partial Response"),[26] and then a full response on February 19, 2010 ("Full Response").[27]  Both responses provided vague and misleading information about the seriousness of the problem.

73.     In both responses, Takata asserted that the defects only existed in specific lots manufactured between certain dates.  Takata claimed that the inflators involved in the 2008 Recall were manufactured between October 29, 2000 and December 1, 2000.  Takata also claimed that inflators involved in the 2009 Recall were manufactured between August 23, 2000 and February 25, 2001.

---

[25] *Id.* at 2.

[26] Letter from Kazuo Higuchi, Senior Vice President, TK Holdings Inc., to George Person, Chief, Recall Mgmt. Div., NHTSA (Dec. 23, 2009), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/ACM12980965/INRL-RQ09004-37860.pdf (last visited Dec. 2, 2014).

[27] Letter from Kazuo Higuchi, Senior Vice President, Takata, to George Person, Chief, Recall Mgmt. Div., NHTSA (Feb. 19, 2010), *available at* http://s3.documentcloud.org/documents/1293176/airbags-takatacomprehensive.pdf (last visited Dec. 2, 2014).

74.     Takata did not provide the dates the inflators were shipped, as NHTSA requested, because, as Takata claimed, its records did not have that information. Instead, it gave just the manufacturing dates.

75.     In both the Partial Response and the Full Response, Takata stated that it had not provided any airbag inflators that are the same or substantially similar to the inflators in vehicles covered by the recalls in 2008 and 2009 to any customers other than Honda, and that the physical characteristics of the inflator housing used in the Honda vehicles subject to those recalls were unique to Honda. This statement would later prove to be untrue.

76.     In its Full Response, Takata asserted that the defect identified in the 2009 Recall was the result of a single compression press, although Takata recommended to Honda that a small number of other vehicles with propellant processed on a different press be recalled as well.

77.     In the Full Response, Takata asserted that the defective parts were all manufactured on a particular press (the "Stokes press") in a single manufacturing plant. Takata further asserted that while it did manufacture 2,400 inflators using the same process as the defective inflators, the design was different and "[t]herefore Takata is convinced that the inflators sold [redacted] contain no safety-related defect."[28]

78.     Takata wrote in its Full Response that it "believed – [redacted] – that expanding the recall to include all vehicles equipped with inflators manufactured with Stokes propellant produced through and including February 28, 2001 would capture all inflators with tablets that had a risk of producing overly energetic combustion. This recommendation, as well as the analysis that supported it, was presented to Honda on June 12, 2009."[29]

---

[28] *Id.* at 5.
[29] *Id.* at 11-12.

79.    Both Honda and Takata represented to the public and NHTSA that the total number of affected vehicles was small.

### 2010: Recall 10V-041

80.    In 2010, mere months after its previous recall, Honda announced a third recall for an additional 379,000 vehicles, including 2002 Honda CR-V, 2002 Honda Odyssey, 2003 Honda Pilot, 2002-2003 Acura 3.2 TL, and 2003 Acura 3.2 CL vehicles, while adding more 2001 and 2002 Accords and Civics to its 2009 recall list ("2010 Recall").

81.    Honda's explanation for the airbag defects changed yet again.  Honda now said that there were two different manufacturing processes utilized in the preparation of an airbag propellant.  While one process was within specification, the other was not.  Honda's expanded recall reached those vehicles employing airbags that had utilized manufacturing processes not within specification.

### 2011: Recall 11V-260

82.    In April 2011, Honda filed a Part 573 Defect and Noncompliance Report for 2,430 replacement service part airbag modules that might have been installed in vehicles covered by previous recall expansions ("2011 Recall").

### 2013: Recall 13V-132

83.    By 2013, it became clear that the defective airbag issue was more widespread than Takata or Honda initially reported to NHTSA.

84.    According to Honda's 2013 Defect and Noncompliance Report, an exploding airbag in Puerto Rico in October 2011 prompted Honda to ask permission from NHTSA to collect "healthy" airbag modules to see if "abnormal combustion was possible."  Honda found that even its so-called "healthy" airbags could abnormally combust in certain conditions.[30]

---

[30] Letter from Jay Joseph, Senior Manager, Prod. Regulatory Office, Am. Honda Motor Co., Inc., to Nancy Lewis, Assoc. Adm'r for Enforcement, NHTSA, at 3

85.     On February 8, 2013, NHTSA and Honda met to discuss the "ongoing investigation" into Honda's defective Takata airbags.  Honda stated:

> "A recreation of propellant production using the same methods as were used during 2001-2002 production periods indicated that it was possible for propellant produced during 2001-2002 to be manufactured out of specification without the manufacturing processes correctly identifying and removing the out of specification propellant.  Separately, Honda was informed by the supplier of another potential concern related to airbag inflator production that could affect the performance of these airbag modules."[31]

86.     On April 10, 2013, Honda filed a Recall Notification ("2013 Recall") with NHTSA for its 2001-2003 Civic, 2002-2003 CR-V, and its 2002 Odyssey vehicles.  In that notification, Honda asserted that 561,422 vehicles could be affected by the following part defect:

> "In certain vehicles, the passenger's (frontal) airbag inflator could produce excessive internal pressure.  If an affected airbag deploys, the increased internal pressure may cause the inflator to rupture.  In the event of an inflator rupture, metal fragments could be propelled upward toward the windshield, or downward toward the front passenger's foot well, potentially causing injury to a vehicle occupant."[32]

---

(Apr. 10, 2013), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM436448/RCDNN-13V132-7704.pdf (last visited Dec. 2, 2014).

[31] *Id.* at 3.

[32] *Id.* at 2.

87.     On April 11, 2013, Takata filed a Defect Information Report entitled "Certain Airbag Inflators Used as Original Equipment" ("Takata DIR").  In that report, Takata identified the defective airbags as follows:

> "Certain airbag inflators installed in frontal passenger-side airbag
> modules equipped with propellant wafers manufactured at
> Takata's Moses Lake, Washington plant during the period from
> April 13, 2000 (start of production) through September 11, 2002
> . . . and certain air bag inflators manufactured at Takata's
> Monclova, Mexico plant during the period from October 4, 2001
> (start of production) through October 31, 2002 . . . ."[33]

88.     It was not until its April 2013 DIR that Takata finally admitted that its affected inflators were installed as original equipment in vehicles manufactured by car manufacturers other than Honda, including Toyota, Nissan, Mazda, BMW, and General Motors.[34]

89.     Takata claimed ignorance on how many defective inflators were installed in vehicles.  While it said it did not have the information to estimate the number of affected vehicles, Takata still insisted that the total number of installed defective inflators would be extremely low.

90.     Takata described the defect as follows:

> "Some propellant wafers produced at Takata's plant in Moses
> Lake, Washington, between April 13, 2000 and September 11,
> 2002 may have been produced with an inadequate compaction
> force. . . . In addition some propellant wafers used in inflators

---

[33] Letter from Kazuo Higuchi, Senior Vice President, Takata, to Nancy L. Lewis, Assoc. Adm'r of Enforcement, NHTSA, at 2 (Apr. 11, 2013), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM436445/RCDNN-13E017-5589.pdf (last visited Dec. 2, 2014).
[34] *Id.* at 2-3.

produced at Takata's plant in Monclova, Mexico between October 4, 2001 and October 31, 2002 may have been exposed to uncontrolled moisture conditions.  These wafers could have absorbed moisture beyond the allowable limits . . . . In both cases propellant could potentially deteriorate over time due to environmental factors, which could lead to over-aggressive combustion in the event of an airbag deployment.  This could create excessive internal pressure within the inflator and the body of the inflator could rupture."[35]

### Recalls Fail to Prevent Additional Serious Injuries and Deaths

91.　In September 2013, Hai Ming Xu died when the Takata airbag in his 2002 Acura TL explosively deployed during a minor accident that occurred in a parking lot in Alhambra, California.  Police treated Mr. Xu's case as a homicide until his autopsy revealed that the "extensive lacerations on Mr. Xu's face came from a metallic portion of the airbag inflator that hit the deceased on the face as it deployed."[36]  Shockingly, Honda's recalls did not cover cars sold or registered in California.

92.　In July 2014, Claribel Nunez was involved in a crash while driving her 2001 Honda Civic in Florida.  Although she survived the accident, she was badly injured when a chunk of metal from her car's Takata airbag hit her forehead, and she now suffers from continuing injuries.

93.　On September 29, 2014, Hien Tran died four days after her 2001 Honda Accord struck another car in an accident in Florida and the Takata airbag exploded, sending shrapnel into her neck.  The medical examiner stated that the shrapnel tore through the airbag, hitting Ms. Tran and causing "stab-type wounds"

[35] *Id.* at 3-4.

[36] Tabuchi, *supra* note 10.

24

and cutting her trachea.[37]   Indeed, Ms. Tran's death was initially investigated as a homicide by detectives.  A week after Ms. Tran died, Honda sent her a letter in the mail urging her to have the airbag in her car replaced.

94.    On November 13, 2014, Honda disclosed a fifth fatality, and first outside the United States, from airbag shrapnel wounds.  Law Suk Leh, who was nine-months pregnant, died in Malaysia on July 27 after being hit by a piece of metal from a Takata air bag in a Honda City compact car.

95.    Additional deaths linked to Takata airbags may not been disclosed by Honda.  On November 24, 2014, Honda disclosed that it grossly underreported to federal regulators the number of deaths and injury claims linked to possible defects in its vehicles for more than 10 years.[38]   An audit commissioned by Honda found that Honda did not report 1,729 written claims or notices on injuries or deaths from mid-2003 through mid-2014—nearly twice more than the roughly 900 reports for that period that it did make.

### Recalls and Notices Relating to Defective Airbag Inflators in Non-Honda Vehicles

96.    In April 2013, based on Takata's new admissions, six major automakers, including Honda, BMW, Mazda, Nissan, and Pontiac, issued recalls of 3.6 million vehicles containing Takata airbags.

97.    Chrysler and Ford similarly announced limited regional NHTSA recalls for vehicles equipped with Takata airbag inflators which were originally

---

[37] Ben Klayman & Barbara Liston, *Update 2-Fourth U.S. Traffic Death Linked to Takata Air Bags*, Reuters, Oct. 17, 2014, *available at* http://www.reuters.com/article/2014/10/17/autos-takata-airbags-idUSL2N0SC1HS20141017 (last visited Dec. 2, 2014).

[38] Hiroko Tabuchi, *Honda Failed to Report Defects' Full Human Toll*, N.Y. Times, Nov. 24, 2014, *available at* http://www.nytimes.com/2014/11/25/business/honda-failed-to-report-defects-full-human-toll.html (last visited Dec. 2, 2014).

sold or currently registered in Florida, Puerto Rico, Hawaii, or the U.S. Virgin Islands.

98.    In June 2014, NHTSA announced that BMW, Chrysler, Ford, Honda, Mazda, Nissan, and Toyota were conducting limited regional recalls to address a possible safety defect involving Takata airbag inflators.  The recalls followed NHTSA's investigation into six reports of airbag inflator ruptures.

99.    On October 22, 2014, NHTSA expanded the list of vehicles affected by the recall of defective Takata components to cover ten automakers and numerous car models, totaling nearly 8 million vehicles.  Those automakers are BMW (627,615 potentially affected vehicles), Chrysler (371,309 potentially affected vehicles), Ford (58,669 potentially affected vehicles), General Motors (undetermined number of potentially affected vehicles), Honda (5,051,364 potentially affected vehicles), Mazda (64,872 potentially affected vehicles), Mitsubishi (11,985 potentially affected vehicles), Nissan (694,626 potentially affected vehicles), Subaru (17,516 potentially affected vehicles), and Toyota (877,000 potentially affected vehicles).[39]

100.   In a November 18, 2014 statement, NHTSA demanded automakers and Takata expand an airbag recall nationwide, a move the Japanese supplier called "dangerous" because it could slow the distribution of replacements in the riskiest regions.[40]

---

[39] *See* NHTSA, *Consumer Advisory: Vehicle Owners with Defective Airbags Urged to Take Immediate Action* (Oct. 22, 2014), *available at* http://www.nhtsa.gov/About+NHTSA/Press+Releases/Vehicle-owners-with-defective-airbags-urged-to-take-immediate-action (last visited Dec. 2, 2014).

[40] Jeff Plungis et al., *U.S. Clashes with Takata over Nationwide Air-Bag Recall*, Bloomberg, Nov. 19, 2014, *available at* http://www.bloomberg.com/news/2014-11-18/nhtsa-calls-for-nationwide-recall-of-takata-air-bags.html (last visited Dec. 2, 2014).

101.   Over the past 13 years, Takata has known there was a problem with the safety of its airbags, and there have been at least five deaths and dozens of injuries in the United States that have been linked to defective Takata airbags.

### Takata Has Failed to Identify the Cause of the Airbag Defects and Failed to Meet Safety Standards

102.   Takata has proposed several theories as to the cause of its exploding airbags, but it apparently has not discovered the cause.  Takata initially suggested that the defects were caused by workers at its Monclova, Mexico plant leaving moisture-sensitive explosives used in airbag manufacturing on the plant floor, making the explosives prone to "overly energetic combustion."[41]  Later, Takata suggested that the defects in its airbags might be caused by a problem in its factory in Moses Lake, Washington, where a supposed flaw in a machine that presses air bag explosives into wafers had made the explosives unstable.  More recently, Takata offered yet another explanation for the lethal exploding airbags, this time guessing that machine operators at the Moses Lake plant might have inadvertently switched off an "auto reject" function that weeded out poorly made explosives that can become unstable.[42]

103.   Moreover, based on internal Takata documents, Takata was unable to meet its own standards for safety.[43]  According to documents reviewed by Reuters, Takata also cited rust, bad welds, and even chewing gum dropped into at

---

[41] Hiroko Tabuchi, *Air Bag Flaw, Long Known to Honda and Takata, Led to Recalls*, N.Y. Times, Sept. 11, 2014, *available at* http://www.nytimes.com/2014/09/12/business/air-bag-flaw-long-known-led-to-recalls.html (last visited Dec. 2, 2014).

[42] *Id.*

[43] Joanna Zuckerman Bernstein et al., *Exclusive: Takata Engineers Struggled to Maintain Airbag Quality, Documents Reveal*, Reuters, Oct. 17, 2014, *available at* http://www.reuters.com/article/2014/10/18/us-takata-airbags-idUSKCN0I701B20141018 (last visited Dec. 2, 2014).

least one inflator as reasons for the defects.  The same documents show that in 2002, Takata's plant in Mexico allowed a defect rate that was "six to eight times above" acceptable limits, or roughly 60 to 80 defective parts for every 1 million airbag inflators shipped.[44]

104.   Since Takata apparently does not know the cause of its airbag defects, there is no assurance that its replacement airbags are any safer than the original ones.  On November 20, 2014, Hiroshi Shimizu, Takata's Senior Vice President for Global Quality Assurance, testified before the U.S. Senate Committee on Commerce, Science and Transportation.  During the testimony, Mr. Shimizu could only describe the deadly explosive airbags made by his company as "anomalies."[45]  Additionally, in testimony on December 3, 2014 before the U.S. House Energy and Commerce subcommittee on Commerce, Manufacturing and Trade, Mr. Shimizu admitted the propellant in Takata's exploding airbags, ammonium nitrate—which an independent expert has said is unsuitable for airbags—is the same propellant used in its replacement airbags.[46]

**Takata Destroyed Evidence That Its Airbags Were Defective and Continued to Manufacture Defective Airbags Until at Least 2009**

105.   According to recent interviews that the *New York Times* conducted with two former Takata employees, Takata engaged in alarming conduct to conceal the defects, beginning in 2004.  The *New York Times* reported that "the former Takata employees, who between them had four decades of experience at

---

[44] *Id.*

[45] Examining Takata Airbag Defects and the Vehicle Recall Process: Hearing Before the S. Comm. on Commerce, Sci., & Transp., 113th Cong. (2014) (testimony of Hiroshi Shimizu, Senior Vice President for Global Quality Assurance, Takata Corp.), *available at* http://www.commerce.senate.gov/public/index.cfm?p=Hearings&ContentRecord_id=d71026cd-07a0-41a7-bc48-5cc08043acc1 (last visited Dec. 2, 2014).

[46] Testimony of Hiroshi Shimizu, *supra* note 1.

the company, spoke on the condition of anonymity because of continuing ties to Takata."[47]  These employees "were speaking up because of concerns that their former employer was not being forthright about the defective airbags."[48]

106.   The *New York Times* also obtained internal Takata documents, emails, photos, and videos that show that Takata continued to produce defective airbags until at least 2009—long after Takata claims to have fixed the problems and long after the last recalled vehicles were manufactured.  For example, an internal Takata presentation given in 2009—made available online[49]—reveals that a "suspect lot" of airbag inflators were assembled at Takata's Monclova, Mexico plant using propellant manufactured at its Moses Lake, Washington plant.  The suspect lots showed a "[d]eployment anomaly" associated with "low density propellant" that resulted in "aggressive ballistics."[50]  The presentation reveals that an investigation was "underway for new density measurement technology," indicating that Takata did not have the ability to properly test for this defect at the time.[51]  These 2009 defects were never before publicly disclosed.

107.   "Two former quality-control managers at [Takata's] main distribution center in Texas" also described in interviews "a series of quality problems that arose" at Takata facilities.[52]  Additionally, internal Takata documents show that airbag units "were being delivered to automakers wet or damaged because of transportation mishaps."[53]  "Closed-circuit television footage shows forklifts

---

[47] Tabuchi, *supra* note 10.

[48] *Id.*

[49] Takata, TKH Operations, SDI Propellant Density presentation, *available at* http://www.documentcloud.org/documents/1354844-takatadoc1.html (last visited Dec. 2, 2014).

[50] *Id.* at 1.

[51] *Id.* at 4.

[52] Tabuchi, *supra* note 10.

[53] *Id.*

dropping stacks of the airbag units."[54]   The former quality-control managers said that "dropped airbags were not always properly inspected for damage[.]"[55]   A video and pictures made available on the *New York Times'* website confirm dropped airbags were likely frequent.

108.   "'The whole situation makes me sick,' one [Takata] manager wrote in a February 2007 email addressed to multiple colleagues in which he complained that checks the [Texas] center had introduced to try to keep the airbags dry— including hosing down trucks to check for leaks—were being ignored."[56]

109.   The problems were exacerbated by the reckless demand to meet intense and exacting airbag delivery schedules by car manufacturers, such as Honda, which demanded "parts to arrive at assembly plants only as they are required."[57]   "Workers were often told that if a client like Honda or Toyota was required to stop production at their plants because of a late Takata shipment, the parts supplier would be fined tens of thousands of dollars for every minute of lost production."[58]

110.   "'[The manufacturers' demands] put a lot of pressure and incentive on us to never miss a shipment,' said one of the former managers.  'I'd argue, "what if my daughter bought the car with the bad airbag?"  But the plant would tell us, "Just ship it."'"[59]

**Federal Investigations**

111.   NHTSA is now investigating Takata airbags manufactured between 2000 and 2007 to determine whether Takata airbag inflators made during that

---

[54] *Id.*
[55] *Id.*
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*

time were improperly sealed.  NHTSA recently announced that it will scrutinize Honda's failure to fully report deaths and injuries involving Takata airbags, warning that "'Honda and the other automakers are legally obligated to report this information to us and failure to do so will not be tolerated.'"[60]

112.   In a Consumer Advisory dated October 22, 2014, NHTSA said:

"The National Highway Traffic Safety Administration urges owners of certain Toyota, Honda, Mazda, BMW, Nissan, Mitsubishi, Subaru, Chrysler, Ford and General Motors vehicles to act immediately on recall notices to replace defective Takata airbags.  Over seven million vehicles are involved in these recalls, which have occurred as far back as 18 months ago and as recently as Monday.  The message comes with urgency, especially for owners of vehicles affected by regional recalls in the following areas: Florida, Puerto Rico, limited areas near the Gulf of Mexico in Texas, Alabama, Mississippi, Georgia, and Louisiana, as well as Guam, Saipan, American Samoa, Virgin Islands and Hawaii."[61]

113.   On or about October 30, 2014, NHTSA opened an Audit Query, AQ14-004, "to investigate the extent and scope of Honda's reporting failures" relating to defective Takata airbag incidents, "as well as the reason(s) for such failures and the steps being taken by Honda to assure full compliance with TREAD[62] reporting requirements." [63]  NHTSA reported it "has received

---

[60] Eric Beech & Patrick Rucker, *U.S. Opens Probe into Honda Reporting of Takata Air Bag Failures*, Reuters, Nov. 4, 2014, *available at* http://www.reuters.com/article/2014/11/04/us-honda-takata-nhtsa-idUSKBN0IN24K20141104 (last visited Dec. 2, 2014).

[61] NHTSA, *supra* note 39.

[62] Transportation Recall Enhancement, Accountability and Documentation ("TREAD") Act, codified at 49 U.S.C. §§ 30101–83.

information indicating that American Honda Motor Co. (Honda) failed to report incidents involving Takata airbags, which resulted in a death or injury, and for which claims were asserted against Honda."[64]  Honda did not report these incidents, as required by the TREAD Act.  "NHTSA is also concerned that Honda's reporting failures go beyond the Takata incidents described above."[65]

114.   On or about November 3, 2014, NHTSA issued a special order to American Honda and its parent company, Honda Motor, to investigate the Audit Query described above.  Honda is required to provide a response, signed under oath by a responsible officer of Honda, stating that its answers and production of documents are complete and correct.[66]  The special order asks, among other requests, for Honda to "[i]dentify the outside counsel retained by Honda on September 19, 2014 to perform a third-party audit of Honda's EWR reporting procedures" and to "[s]tate how and when Honda first became aware that it had not been reporting all EWR information to NHTSA."[67]  The special order also references a "December 13, 2011 Summary of Field Incidents that was provided to NHTSA on or about January 26, 2012," and asks Honda to explain all incidents on that list that were not reported through the required reporting system.[68]

[63] NHTSA, Open Audit Query, Oct. 30, 2014, *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM465849/INOA-AQ14004-9813.PDF (last visited Dec. 2, 2014).
[64] *Id.*
[65] *Id.*
[66] NHTSA Special Order Directed to Am. Honda Motor Co., Inc., Nov. 3, 2014, at 1-2, *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM466020/INLM-AQ14004-60578.pdf (last visited Dec. 2, 2014).
[67] *Id.* at 9-10.
[68] *Id.* at 10-11.

115.   NHTSA rarely issues special orders and does so only when it suspects "'some possible real wrongdoing or a failure to be forthright with the agency in the past with respect to the defect at issue.'"[69]

116.   On or about November 5, 2014, NHTSA ordered Honda to provide additional documents and answer further questions under oath related to Takata airbags.  In that order, NHTSA is seeking all internal Honda communications related to Takata airbag inflators, as well any field reports, warranty claims and pre-suit legal claims, incidents, and lawsuits related to the issue.  NHTSA also is requiring Honda to disclose whether it sent any employees to visit Takata plants in the United States or Mexico starting in 2000.

117.   The United States Attorney for the Southern District of New York has recently opened an investigation into defective Takata airbags and, in particular, whether Takata made misleading statements about the safety of its airbags to federal safety regulators and the number of defective airbags it sold to automakers, including Honda.

118.   Senators Richard Blumenthal and Ed Markey recently made a statement in support of that Department of Justice investigation of Takata, saying that "'[r]eports that Takata concealed and destroyed test results revealing fatal air bag defects, along with other evidence that the company was aware of these deadly problems, clearly require a criminal investigation by the Department of Justice.'"[70]

---

[69] Ryan Beene, *A Harsher Light on Takata: Hints of a Cover-up Going Back a Decade*, Automotive News, Nov. 9, 2014, *available at* http://www.autonews.com/article/20141109/OEM10/311109936/a-harsher-light-on-takata (last visited Dec. 2, 2014).

[70] Press Release, Richard Blumenthal, U.S. Sen. for Conn., *Blumenthal, Markey Call on Department of Justice to Open Criminal Investigation of Takata* (Nov. 7, 2014), *available at* http://www.blumenthal.senate.gov/newsroom/press/release/blumenthal-markey-

119.   Congress also has questioned the legality of Toyota's and other automaker's responses.  U.S. Senators Blumenthal and Markey, in a letter to the U.S. Department of Transportation ("DOT"), expressed their concern "that NHTSA has endorsed a policy recently announced by Toyota and GM that dealers should disable passenger-side airbags and instruct against permitting passengers in the front seat if replacement parts for these airbags are unavailable."[71]  They noted further:

> "As a matter of policy, this step is extraordinarily troubling and potentially dangerous.  As a matter of law . . . §30122(b) of the Motor Vehicle Safety Act (49 U.S.C.) prohibits a manufacturer from knowingly making a safety device inoperative unless the [DOT] issues a specific exemption.  We are unaware of an exemption from your office in the case of Takata airbags."[72]

120.   Equally important, the Senators said that: "[A]ll drivers deserve access to loaners or rental cars at no cost to them while they await repairs to their cars that make them safe enough to drive again."[73]  "[NHTSA] should strongly encourage manufacturers to provide rental cars at no cost to consumers if their cars cannot be fixed immediately because of insufficient replacement parts."[74]

121.   On November 26, 2014, NHTSA declared that Takata airbags are "a defect related to motor vehicle safety [that] exists on a national basis" and made

---

call-on-department-of-justice-to-open-criminal-investigation-of-takata- (last visited Dec. 2, 2014).

[71] Letter from Sens. Richard Blumenthal & Edward J. Markey to Honorable Anthony Foxx, Secretary, U.S. DOT, at 1 (Oct. 23, 2014), *available at* http://www.blumenthal.senate.gov/download/senators-blumenthal-markey-to-secretary-foxx-nhtsa (last visited Dec. 2, 2014).

[72] *Id.*

[73] *Id.* at 2.

[74] *Id.* at 1.

"a formal demand that Takata immediately submit to NHTSA a Part 573 Report that identifies a defect in the subject driver's side air bag inflators and is nationwide in scope."[75]  Takata has refused to comply.[76]  NHTSA also stated that Takata has not provided sufficient information "to support its position that a regional recall is appropriate, nor has Takata provided any explanation" for airbag explosions that occurred outside of high humidity areas.  NHTSA further declared that Takata's exploding airbags are a defect "in an essential component" of a motor vehicle, have failed a significant number of times while in ordinary use, and present an unreasonable risk to public safety.[77]

122.   As these investigations and concerns show, there is an immediate need to provide safe vehicles for Plaintiffs and Class members.

### Defendants Have Failed to Provide Owners and Lessees of Defective Vehicles with Safe Replacement Parts or Vehicles

123.   Since Takata apparently does not know the cause of its airbag explosions, there is no reason to believe that Takata's replacement airbags will be any safer than the originals.

124.   Moreover, even if Takata's replacement airbags were safe, Takata is apparently unable to manufacture new airbags quickly enough to replace the faulty airbags in the nearly 8 million vehicles that are the subject of the most recent recall within a reasonable period of time.  "'There's simply not enough parts to repair every recalled single car immediately,' said Chris Martin, a spokesman for

---

[75] *Id.* at 3.

[76] Letter from Mike Rains, Director of Prod. Safety, TK Holdings Inc., to Frank S. Boris II, Director, Office of Defects Investigation, NHTSA (Dec. 2, 2014).

[77] Letter from Frank S. Borris II, Director, Office of Defects Investigation, NHTSA, to Kazuo Higuchi, Senior Vice President, TK Holdings Inc., at 2 (Nov. 26, 2014), *available at* http://www-odi.nhtsa.dot.gov/acms/cs/jaxrs/download/doc/UCM467315/INRM-PE14016-60978.pdf (last visited Dec. 2, 2014).

Honda."[78]  And, as alleged above, the number of vehicles subject to recall is likely to increase.

125.   In a statement from Honda regarding Airbag Inflator Regional Safety Improvement Campaigns, dated October 22, 2014, Honda announced: "If a customer has received notification from Honda about this special campaign, Honda requests that the customer promptly contact his/her local authorized dealer and make an appointment for replacement of the covered airbag components."[79]

126.   However, Honda has acknowledged that it will not send out recall letters to car owners or lessees until there are parts available, meaning that many drivers will not receive recall notices as they continue to drive vehicles with defective Takata airbags.[80]

127.   Honda Authorized dealers, who are experiencing a severe shortage of parts to replace the faulty airbags, have been telling frustrated car owners to expect to wait many months before their airbags can be replaced.  Honda owners who have received recall notices have been told to wait at least a month before their authorized dealer has availability to assess their vehicle.

128.   Customers have been put in dire straits because replacement airbag parts are not available in the quantities demanded by those affected by the millions of recalls.  At this time, Honda is not offering customers loaner cars to use until their airbags can be replaced.  Although Honda has suggested, that it

---

[78] Hiroko Tabuchi & Christopher Jensen, *It Looked Like a Stabbing, but Takata Airbag Was the Killer*, N.Y. Times, Oct. 20, 2014, *available at* http://www.nytimes.com/2014/10/21/business/it-looked-like-a-stabbing-but-takata-air-bag-was-the-killer.html (last visited Dec. 2, 2014).

[79] Statement from Honda regarding Air Bag Inflator Regional Safety Improvement Campaigns, Oct. 22, 2014, *available at* http://media.cmgdigital.com/shared/news/documents/2014/10/23/Statement_from_Honda_10.22.2014.pdf (last visited Dec. 2, 2014).

[80] Tabuchi & Jensen, *supra* note 78.

may offer loaner cars if, in its view, there are inadequate replacement parts, Honda has offered no details, such as whether it has the capability to do so or whether the loaner cars will be equipped with safe, non-defective airbags.[81]

## TOLLING OF STATUTES OF LIMITATIONS

### Fraudulent Concealment

129.   Takata has known of the defects in its airbags since at least 2001. Honda has known of the defects in the Takata airbags in Honda's vehicles since at least 2004.  Defendants nonetheless concealed from, or failed to notify, Plaintiffs, Class members, and the public of the existence, nature, and severity of the risks posed by the defects.

130.   Although Defendants now have acknowledged to safety regulators that Takata airbags are defective, for years Defendants did not fully investigate or disclose the seriousness of the issue and in fact downplayed the widespread prevalence of the problem.

131.   As a result of this conduct, and the fact that Plaintiffs and Class members did not know and realistically could not have discovered that they had a cause of action, any applicable statutes of limitation have been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, behavior which is ongoing.

### Equitable Estoppel

132.   Defendants were and are under a continuous duty to disclose to Plaintiffs and Class members the true character, quality, and nature of the vehicles and components they manufacture.  Defendants actively concealed the true character, quality, and nature of the vehicles and knowingly made misrepresentations about the quality, reliability, characteristics, safety, and performance of the vehicles and airbags.  Plaintiffs and Class members reasonably

---

[81] *See* Testimony of Rick Schostek, *supra* note 2.

relied upon Defendants' knowing and affirmative misrepresentations or omissions regarding these facts.  Defendants therefore are estopped from relying on any applicable statutes of limitation in defense of this action.

### Equitable Tolling or Discovery Rule

133.   Plaintiffs and Class members had no realistic ability to discern that the vehicles and airbags were defective until, at the earliest, after an airbag deployed or exploded.  Even then, and only if they were lucky enough to have survived, Plaintiffs and Class members would have no reason to know that the explosion was caused by a defect in the airbags given Defendants' active concealment of the true nature of the defect.

134.   Plaintiffs' and Class members' causes of action therefore did not accrue until Plaintiffs and Class members discovered that they owned a Defective Vehicle.

### CLASS ACTION ALLEGATIONS

135.   Plaintiffs bring this action as a class action on behalf of themselves and all other persons similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and or (c)(4). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

### Nationwide Class

136.   Plaintiffs seek to represent a class (the "Nationwide Class") defined as:
>        All current and former owners and lessees of one or more Defective
>        Vehicles in the United States.

### Statewide Classes

137.   Plaintiffs also allege causes of action for the following statewide classes, defined as follows:

a.   All current and former owners and lessees of one or more Defective Vehicles in the State of California (the "California Class") as represented by the California Plaintiffs.

b.   All current and former owners and lessees of one or more Defective Vehicles in the State of Michigan (the "Michigan Class") as represented by the Michigan Plaintiffs.

138.   Excluded from each class are Defendants, their co-conspirators, officers, directors, legal representatives, successors, and wholly or partly owned subsidiaries or affiliated companies; the judicial officers and associated court staff assigned to this case; and any individuals asserting claims from personal injuries or wrongful death caused by the defective goods at issue in this action.

**Numerosity**

139.   Millions of Class members purchased or leased Defective Vehicles such that joinder of all members is impractical.

140.   Class members can be identified using vehicle registration records, sales records, production records, and other information kept by Defendants or third parties in the usual course of business and within their control.

**Commonality**

141.   Common questions of law and fact predominate over any questions affecting individual members of each Class, the answers to which will advance resolution of the litigation as to all Class members.  These common questions of law and fact include, but are not limited to:

a.   Whether the Defective Vehicles suffer from airbag defects;

b.   Whether the Defective Vehicles have suffered a diminution of value as a result of those Vehicles' incorporation of the Takata airbags;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

c.      Whether Defendants knew or should have known about the airbag defects, and, if so, how long Defendants have known of the defects;

d.      Whether the defective nature of the Defective Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase, lease, or retain a Defective Vehicle;

e.      Whether Defendants had a duty to disclose the defective nature of the Defective Vehicles to Class members;

f.      Whether Defendants failed to disclose material facts about the Defective Vehicles;

g.      Whether Defendants' concealment of the vehicle defects induced Plaintiffs and Class members to act to their detriment by purchasing, leasing, or retaining the Defective Vehicles;

h.      Whether Defendants' conduct tolls any or all applicable limitations periods by acts of fraudulent concealment, application of the discovery rule, equitable tolling, or equitable estoppel;

i.      Whether Defendants misrepresented that the Defective Vehicles were safe;

j.      Whether Defendants engaged in unfair, deceptive, unlawful, or fraudulent acts or practices in trade or commerce by failing to disclose that the Defective Vehicles were designed, manufactured, and sold with defective airbag inflators;

k.      Whether Defendants' conduct, as alleged herein, was likely to mislead a reasonable consumer;

l.      Whether Defendants' statements, concealments, and omissions regarding the Defective Vehicles were material, in that a

40

reasonable consumer could consider them important in purchasing, leasing, selling, maintaining, or operating such vehicles;

m.  Whether the Defective Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

n.  Whether Defendants have been unjustly enriched by their conduct;

o.  Whether Plaintiffs and the Class are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction; and

p.  What aggregate amounts of damages are sufficient to punish and deter Defendants and to vindicate statutory and public policy.

### Typicality

142.  Plaintiffs' claims are typical of the claims of the members of the Class, and arise from the same wrongful course of conduct on the part of Defendants. The relief Plaintiffs seek is typical of the relief sought for other Class members.

### Adequacy of Representation

143.  Plaintiffs will fully and adequately protect the interests of the other members of the Class and have retained class counsel who are experienced and qualified in prosecuting class actions, including consumer class actions and other forms of complex litigation.  Neither Plaintiffs nor their counsel have interests that conflict with the interests of other Class members.

### Superiority

144.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class members is impracticable.  Because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual

41

litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

145.   The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications for individual Class members, which would establish incompatible standards of conduct for Defendants.  The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

146.   This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2), because Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and all Class members, thereby making appropriate final injunctive relief and declaratory relief with respect to the Class as a whole.

147.   Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action. Plaintiffs anticipate providing appropriate notice to be approved by the Court after discovery into the size and nature of the Class.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Violation of the Magnuson-Moss Warranty Act,**

**15 U.S.C. §§ 2301–12)**

148.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

149.   Plaintiffs bring this count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by each statewide class.

150.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301-12 by virtue of 28 U.S.C. § 1332(d).

151.   Plaintiffs are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

152.   Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

153.   The Defective Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

154.   Under 15 U.S.C. § 2310(d)(1)(b), a consumer who is damaged by the failure of a supplier or warrantor to comply with a written or implied warranty may bring a federal cause of action.

155.   Defendants provided Plaintiffs and Class members with an express warranty in connection with the purchase or lease of their vehicles that is a "written warranty" within the meaning of Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  Defendants made various written representations that their vehicles, including Defective Vehicles, were safe and offered enhanced and properly functioning safety features, such as airbags.  For example, Honda marketed itself as an industry leader that provided ""all [its] customers with top level safety'" given that virtually all of its Honda and Acura vehicles, including Defective Vehicles, contained "advanced safety technologies," including airbags.[82]

156.   Defendants provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their

---

[82] Press Release, Honda, Honda's 'Safety for Everyone' Initiative (Oct. 29, 2003), *available at* http://www.honda.com/newsandviews/article.aspx?id=2003102935709 (last visited Dec. 2, 2014); *see also, e.g.*, Press Release, Honda, Honda Announces All New 2006 Civic for the US (Aug. 31, 2005), *available at* http://world.honda.com/news/2005/4050831.html (last visited Dec. 2, 2014) (emphasizing the Civic's "enhanced safety," including its airbags, in marketing the 2006 Civic).

vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

157.   Defendants breached these written and implied warranties, as described in more detail above.  Without limitation, the Defective Vehicles share a common design defect in that they are equipped with defective airbags that can suddenly fail during normal operation, leaving occupants of the Defective Vehicles vulnerable to serious injury and death.  Defendants have admitted that the Defective Vehicles are defective in issuing recalls, but those recalls are inadequate to remedy the defects.

158.   In their capacity as suppliers and warrantors, as Defendants had knowledge of the inherent defects in the Defective Vehicles, any efforts to limit the implied warranties in a manner that would exclude coverage of the Defective Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Defective Vehicles is null and void.

159.   Plaintiffs and each of the other Class members have had sufficiently direct dealings with Defendants or their agents to establish privity of contract between Defendants, on the one hand, and Plaintiffs and each of the other Class members, on the other hand.  Nonetheless, privity is not required or is excused here because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Defendants, and specifically, of Defendants' implied warranties.  Finally, privity is also not required or is excused because the Defective Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

160.   Under 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give Defendants notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

161.   Moreover, at the time of sale or lease of each Defective Vehicle, Defendants knew, should have known, or were reckless in not knowing of their misrepresentations concerning the Defective Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation or disclose the defective design.  Defendants knew of these defects for years and took insufficient actions to address them, rendering any notice and opportunity to cure excused, waived, or unreasonable.  Additionally, under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

162.   Plaintiffs and Class members would suffer economic hardship if they returned their Defective Vehicles but did not receive the return of all payments made by them.  Because Defendants refuse to acknowledge any revocation of acceptance and refuse to return immediately any payments made, Plaintiffs and the other Class members have not re-accepted their Defective Vehicles by retaining them.

163.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the other Class members, seek all damages permitted by law, including diminution in the value of their vehicles, in an amount to be proven at trial.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the other Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the other Class members in connection with the commencement and prosecution of this action.

45

164.   Further, Plaintiffs and the Class are also entitled to other legal and equitable relief under 15 U.S.C. § 2310(d)(1).  Based on Defendants' continuing failures to fix the known dangerous defects, Plaintiffs seek a declaration that Defendants have not adequately implemented their recall commitments and requirements and general commitments to fix their failed processes, and injunctive relief in the form of judicial supervision over the recall process.

165.   Plaintiffs also seek the establishment of a Defendant-funded program for Plaintiffs and the Class to recover out-of-pocket costs incurred, as discussed above, and demand repayment of the out-of-pocket expenses and costs Plaintiffs and Class members have incurred in attempting to rectify the airbags in their vehicles.  Such expenses and losses will continue as Plaintiffs and Class members must take time off from work and pay for rental cars or other transportation arrangements, child care, and other expenses incurred as a result of the recall.

## SECOND CAUSE OF ACTION

### (Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750–85)

166.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

167.   Plaintiffs bring this count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by the California Class.

168.   This claim is brought on behalf of Plaintiffs and Class members for injunctive relief against Defendants under the California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–85.

169.   Plaintiffs and Class members are "consumers" who purchased or leased one or more Defective Vehicles under Cal. Civ. Code § 1761(d).

170.   Defendants are "persons" under Cal. Civ. Code § 1761(c).

171.   Defective Vehicles are "goods" under Cal. Civ. Code § 1761(a), and the sales or leases of those vehicles are "transactions" within the meaning of Cal. Civ. Code § 1761(e).

172.   Under Cal. Civ. Code § 1770(a), the CLRA prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer[.]" Defendants violated and continue to violate the CLRA by engaging in at least the following conduct:

    a.   "Representing that [the Defective Vehicles and/or the Takata airbags have] . . . approval, characteristics, . . . uses, [or] benefits . . . which they do not have . . . ."  Cal. Civ. Code § 1770(a)(5).

    b.   "Representing that [the Defective Vehicles and/or the Takata airbags are] of a particular standard, quality or grade . . . [when] they are of another."  Cal. Civ. Code § 1770(a)(7);

    c.   "Advertising [the Defective Vehicles and/or Takata airbags] . . . with intent not to sell them as advertised."  Cal. Civ. Code § 1770(a)(9); and

    d.   "Representing that [the Defective Vehicles and/or Takata airbags have] been supplied in accordance with a previous representation when [they have] not."  Cal. Civ. Code § 1770(a)(16).

173.   As alleged in this Complaint, Defendants made material statements about the safety and reliability of Defective Vehicles and/or Takata airbags that were either false or misleading.

174.   As alleged in this Complaint, Defendants knew of dangers and risks posed by the Takata airbags, while Plaintiffs and Class members were deceived by Defendants' omissions into believing the Defective Vehicles were safe, and the

information could not have reasonably been known by Plaintiffs and Class members.

175.  Defendants knew or should have known that their conduct violated the CLRA.

176.  In the course of their business, Defendants willfully failed to disclose and concealed the risks and dangers of the Takata airbags in the Defective Vehicles as described in this Complaint, and otherwise engaged in deceptive activities.  Defendants also engaged in unlawful trade practices by at least the following conduct in connection with the sale or lease of Defective Vehicles: fraud; misrepresentations; deception; deceptive acts or practices; and concealment, suppression, or omission of material facts with intent that others rely upon such concealment, suppression, or omission.  Defendants are directly liable for their unfair and deceptive acts or practices in the conduct of trade or commerce in violation of the CLRA.  Because Defendants' subsidiaries acted during the relevant period as their parent companies' agents in the United States for purposes of sales and marketing, Defendants' parent companies are liable for their subsidiaries' violation of the CLRA.

177.  To generate more profits and to avoid costs and a public relations fiasco, Defendants concealed the risks and dangers of the Takata airbags and their horrible consequences, and allowed Class members to continue buying, leasing, and driving highly dangerous vehicles.

178.  Defendants' failure to disclose material information concerning the Defective Vehicles and/or Takata airbags, which they knew about the time of the sale or lease, was a deceptive trade practice.  Defendants deliberately concealed the Takata airbag defects in order to induce consumers to continue purchasing their vehicles.

179.  Defendants owed a duty to Plaintiffs and Class members to disclose the defective nature of Defective Vehicles, and the Takata airbag defects,

48

including the risk that the Takata airbags will release shrapnel upon deployment, because they:

      a.    Made incomplete and misleading representations about the safety and reliability of Defective Vehicles and/or Takata airbags, while withholding material facts from Plaintiffs and Class members that belied these representations.

      b.    Possessed exclusive knowledge of the defects that made the Defective Vehicles and/or Takata airbags more dangerous than similar vehicles; and/or

      c.    Intentionally concealed the dangers and risks of Defective Vehicles and/or Takata airbags through deceptive marketing tactics and a recall program designed to hide the life-threatening problems from Plaintiffs and Class members.

180. Defendants engaged in deceptive acts and practices in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the vehicles.

181. Defendants violated the CLRA by representing through warranties, marketing, and advertisements that the vehicles were safe, reliable, and fit for their ordinary purpose, as described above, when they knew, or should have known, that the representations and advertisements were unsubstantiated, false, and misleading. Defendants continue to make representations, as alleged above, that the vehicles are safe, reliable, and fit for their ordinary purpose even though they are not.

182. Defendants intentionally and knowingly misrepresented material facts regarding the Defective Vehicles and intended to mislead Plaintiffs and Class members. Defendants' unfair or deceptive acts or practices were likely to mislead reasonable consumers, including Plaintiffs and Class members, about the safety and reliability of Defective Vehicles and/or Takata airbags.

183.   The Defective Vehicles and/or Takata airbags carried and continue to carry an unreasonable risk of death or serious bodily injury to Plaintiffs and Class members, passengers, other drivers, and the public at large, because the Takata airbags have a propensity to spray shrapnel upon deployment and have other defects.

184.   Defendants also violated the CLRA by violating the TREAD Act, 49 U.S.C. §§ 30101–83, and accompanying regulations by failing to notify promptly vehicle owners, purchasers, dealers, and NHTSA of the defective Takata airbags, and by failing to remedy the defects.

185.   Under the TREAD Act and its regulations, if it is determined that a vehicle is defective, the manufacturer must promptly notify vehicle owners, purchasers, and dealers of the defect and remedy the defect.  49 U.S.C. § 30118(b)(2)(A) & (B).  Defendants failed to do this.

186.   Under the TREAD Act and its regulations, if a manufacturer learns that a vehicle contains a defect and that defect is related to motor vehicle safety, the manufacturer must disclose the defect.  49 U.S.C. § 30118(c)(1) & (2). Defendants failed to do this.

187.   Under the TREAD Act and its regulations, manufacturers must also file a report to NHTSA within five working days of discovering "a defect in a vehicle or item of equipment has been determined to be safety related, or a noncompliance with a motor vehicle safety standard has been determined to exist."  49 C.F.R. § 573.6(a) & (b).  At a minimum, the report to NHTSA must include: the identification of the vehicles or equipment containing the defect, including the make, line, model year, and years of manufacturing; the manufacturer's name; a description of how those vehicles differ from similar vehicles that the manufacturer excluded from the recall; a description of the basis for determining which vehicles will be recalled; and a description of the defect. 49 C.F.R. § 276.6(b), (c)(1), (c)(2), (c)(5).  The manufacturer must also promptly

inform NHTSA about: the percentage of vehicles estimated to contain the defect; the total number of vehicles or equipment potentially containing the defect; a chronology of all principal events that were the basis for the determination that the defect related to motor vehicle safety, including a summary of all warranty claims, field or service reports, and other information, with its dates of receipt; and a description of the plan to remedy the defect.  49 C.F.R. § 276.6(b) & (c).

188.   The TREAD Act provides that any manufacturer who violates 49 U.S.C. § 30166 must pay a civil penalty to the U.S. Government of "$7,000 per violation per day," with a maximum penalty "for a related series of daily violations is $17,350,000."  49 C.F.R. § 578.6(c).  Defendants' violations of the TREAD Act's disclosure obligations continue to pose a grave risk to Plaintiffs and Class members.

189.   Defendants engaged in deceptive business practices under CLRA, Cal. Civ. Code §§ 1750–85, by, among other things, selling vehicles while violating the TREAD Act and failing to disclose and actively concealing the risks and dangers of the Takata airbags.

190.   Takata knew at least as early as 2001, and Honda as early as 2004, that the defective Takata airbags could spray shrapnel upon deployment, and otherwise malfunction, but Defendants failed for many years to notify the public of this defect.  As a result, Plaintiffs and Class members were not made aware of the defects in the Takata airbags and Defective Vehicles.  Defendants also failed to inform NHTSA or warn Plaintiffs, Class members, and the public about these risks, defects and dangers, even though they had a duty to do so.

191.   The propensity of the Takata airbags to release shrapnel upon deployment, and otherwise malfunction in the Defective Vehicles, was material to Plaintiffs and Class members.  Had Plaintiffs and Class members known that their vehicles had these serious safety defects, they either would have not purchased or leased their Defective Vehicles, or would have paid less for them than they did.

51

192.   Defendants' unfair or deceptive acts or practices were likely to and did in fact mislead reasonable consumers, including Plaintiffs and Class members, about the safety and reliability of the Takata airbags and the Defective Vehicles.

193.   Plaintiffs and Class members have been proximately and directly damaged by Defendants' misrepresentations, concealment, and non-disclosure of the Defective Vehicle and Takata airbag defects.  They own and lease vehicles whose value has greatly diminished because of the defects.  The diminishment of the Defective Vehicles' value was made worse by Defendants' failure to disclose and remedy the dangers and risks of the Takata airbags.  Defendants' egregious conduct, and the slow nature of Defendants' recalls, have so tarnished the reputation of the Defective Vehicles that reasonable consumers would not have purchased them or would not pay what would otherwise be their fair market value.

194.   All Class members suffered ascertainable loss caused by Defendants' failure to disclose this material information.  The Class members overpaid for their vehicles and did not receive the benefit of their bargain.  The defects, and Defendants' concealment of and failure to remedy those defects, has diminished the value of the Defective Vehicles.

195.   Defendants' recalls and repairs have not been adequate and have not offered an effective remedy, not least because the repairs have not been offered for all Defective Vehicles and neither Takata nor Honda has identified how Takata's airbag failures can be corrected.

196.   Defendants' unlawful acts and practices complained of in this Complaint affect the public interest.  Plaintiffs and Class members risk irreparable injury as a result of Defendants' violations of the CLRA, and these violations present a continuing risk to Plaintiffs and Class members, as well as to the general public.

197.   Plaintiffs and Class members have suffered injury-in-fact and actual damage as a direct and proximate result of Defendants' violations of the CLRA, and if Defendants' violations are not stopped, they will continue to harm Class members.  Defendants' acts and omissions in violation of the CLRA cause irreparable injury to Plaintiffs and Class members and present a continuing risk to Plaintiffs and Class members, as well as to the general public.

198.   Plaintiffs and Class members seek to enjoin Defendants' unfair or deceptive acts or practices, and seek restitution and injunctive relief.  Should Defendants fail to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to Section 1782 of the CLRA, Plaintiffs and Class members will further seek claims for actual, punitive, and statutory damages including, but not limited to, costs of court, attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under the CLRA.

199.   In accordance with Section 1782(a) of the CLRA, Plaintiffs' counsel, on behalf of Plaintiffs, will serve Defendants with notice of their alleged violations of California Civil Code § 1770(a) relating to the Defective Vehicles purchased by Plaintiffs and Class members, and demand that Defendants correct or agree to correct the actions described therein.  If Defendants fail to do so, Plaintiffs will amend this Complaint as of right (or otherwise seek leave to amend) to include compensatory and monetary damages to which Plaintiffs and Class members are entitled.

## THIRD CAUSE OF ACTION

### (Violation of the California Unfair Competition Law,
### Cal. Bus. & Prof. Code §§ 17200–10)

200.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

201.   Plaintiffs bring this count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by the California Class.

202.   California Business and Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising. . . ." Defendants engaged in conduct that violated each of this statute's three prongs.

203.   Defendants committed an unlawful business act or practice in violation of § 17200 by their violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750–85, as set forth above, by the acts and practices set forth in this Complaint.

204.   Defendants conduct was unlawful because they have engaged in violations of the TREAD Act as discussed above; the National Traffic and Motor Vehicle Safety Act of 1996, 49 U.S.C. § 30101–83, including 49 U.S.C. §§ 30112, 30115, and 30118; the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750–85; California Business & Professions Code §§ 17200–10 and §§ 17500–09; the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–12; and other statutes and common law causes of action alleged herein.

205.   Federal Motor Vehicle Safety Standard ("FMVSS") 573 governs a motor vehicle manufacturer's responsibility to notify NHTSA of a motor vehicle defect within five days of determining that a defect in a vehicle has been determined to be safety-related.  *See* 49 C.F.R. § 573.6.

206.   Defendants violated the reporting requirements of FMVSS 573 by failing to report the airbag defect within five days of determining the defect existed, and failing to recall all affected vehicles.

207.   Defendants also committed common-law negligent failure to recall, in that they knew or should have known that the Defective Vehicles were dangerous or were likely to be dangerous when used in a reasonably foreseeable manner;

54

Defendants became aware of the attendant risks after the Defective Vehicles were sold; they continued to gain information further corroborating the airbags defects; and Defendants failed to adequately cause the Defective Vehicles to be recalled in a timely manner, which failure was a substantial factor in causing the Class harm, including diminished value and out-of-pocket costs.

208.   Defendants committed unfair business acts and practices in violation of § 17200 when they concealed the existence and nature of the airbag defects, and represented that vehicles containing Takata airbags were reliable and safe when, in fact, they are not.  The Takata airbags present safety hazards for occupants of vehicles in which they are installed.

209.   Defendants' conduct was unfair because of the acts and practices set forth in this Complaint—including the manufacture and sale of vehicles with Takata airbags, and Defendants' failure to adequately investigate, disclose, and remedy the defective and unsafe airbags and vehicles—and because of the harm those acts and practices cause to consumers greatly outweighs any benefits associated with those acts and practices.

210.   Defendants' conduct was also unfair in that they failed to properly administer the numerous recalls of the Defective Vehicles.  As alleged above, the recalls have proceeded unreasonably slowly in light of the safety-related nature of the defects, and have been plagued with shortages of replacement parts as well as a failure to provide safe loaner vehicles to Class members whose vehicles are in the process of being repaired or waiting to be repaired.

211.   Defendants' conduct was fraudulent because the misrepresentations and omissions regarding the safety and reliability of the Defective Vehicles as set forth in this Complaint were likely to deceive a reasonable consumer, and the information would be material to a reasonable consumer.

212.   Defendant committed fraudulent business acts and practices in violation of § 17200 when they concealed the existence of dangers and risks and

the nature of the dangers and risks posed by Takata airbags, while representing in their marketing, advertising, and other broadly disseminated representations that the vehicles containing Takata airbags were reliable and safe when, in fact, they are not.  Defendants' representations and active concealment of the dangers and risks posed by the Defective Vehicles are likely to mislead the public.

213.   The Class has suffered injuries in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and deceptive practices.  As exemplified by the allegations concerning each Plaintiff, in purchasing or leasing their vehicles, the Class reasonably relied on Defendants' misrepresentations with respect to the safety and reliability of the Defective Vehicles.  Defendants' representations turned out not to be true.  Had the Class members known this, they would not have purchased or leased their Defective Vehicles, or would not have paid as much for them.

214.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses.  Defendants' wrongful conduct is part of a pattern of generalized conduct that has been perpetuated and repeated, both in the State of California and nationwide.

215.   As a direct and proximate result of Defendants' unfair and deceptive practices, Class members have suffered and will continue to suffer actual damages.

216.   Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices, as provided in Cal. Bus. & Prof. Code § 17203, and for such other relief set forth below.

217.   Plaintiffs, on behalf of themselves and any class, reserve the right to allege other violations of law which constitute other unlawful, unfair, or fraudulent business acts or practices.  Such conduct is ongoing to the date of this filing.

218.   Plaintiffs also request equitable and injunctive relief in the form of Court supervision of Defendants' recalls of the Defective Vehicles, to ensure that all affected vehicles are recalled and that the recalls properly and adequately cure the defects.

## FOURTH CAUSE OF ACTION

### (Violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–09)

219.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

220.   Plaintiffs bring this count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by the California Class.

221.   California Business and Professions Code § 17500 states:

> "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

222.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, Plaintiffs, and Class members.

57

223.   Defendants violated Section 17500 because the misrepresentations and omissions regarding the safety and reliability of their vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

224.   Plaintiffs and Class members have suffered injuries in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices.  In purchasing or leasing their vehicles, Plaintiffs and Class members relied on the misrepresentations and/or omissions of Defendants with respect to the safety and reliability of their vehicles.  Defendants' representations turned out not to be true.  Had Plaintiffs and Class members known this, they would not have purchased or leased the Defective Vehicles paid as much for them.  Accordingly, Plaintiffs and Class members overpaid for the Defective Vehicles and did not receive the benefit of their bargain.

225.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' businesses.  Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

226.   Plaintiffs and Class members request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, and for such other relief set forth below.

### FIFTH CAUSE OF ACTION

**(Fraud by Concealment)**

227.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

228.   Plaintiffs bring this count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by each statewide class.

229.   Defendants intentionally concealed material facts from Plaintiffs, the other Class members, the public, and NHTSA.  Defendants knew that the Defective Vehicles were designed and manufactured with airbag defects, but Defendants concealed those material facts.  Although the Defective Vehicles contain material defects that Defendants knew of, or should have known of, at the time of distribution, Defendants recklessly manufactured and distributed or caused those vehicles to be manufactured and distributed to purchasers in the United States.  Those consumers had no knowledge of the defects.

230.   Defendants had a duty to disclose the facts to Plaintiffs, the other Class members, the public, and NHTSA, but failed to do so.

231.   Defendants knew that Plaintiffs and the other Class members had no knowledge of those facts and that neither Plaintiffs nor the other Class members had an equal opportunity to discover the facts.  Defendants had knowledge superior to that of Plaintiffs and the other Class members.  Plaintiffs and the other Class members trusted Defendants not to sell or lease them vehicles that were defective or that violated federal and state laws governing motor vehicle safety.

232.   By failing to disclose these material facts, Defendants intended to induce Plaintiffs and the other Class members to purchase or lease the Defective Vehicles.

## SIXTH CAUSE OF ACTION

### (Negligent Failure to Recall)

233.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

234.   Plaintiffs bring this count on behalf of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by each statewide class.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

235.   For the reasons set forth above, Defendants knew or reasonably should have known that the Defective Vehicles were dangerous or likely to be dangerous when used in a reasonably foreseeable manner.

236.   For the reasons set forth above, Defendants either knew the Defective Vehicles were dangerous before the vehicles were sold, or became aware of the dangerous defect afterward.

237.   Despite Defendants' knowledge, they failed to adequately recall the Defective Vehicles in a timely manner.

238.   Purchasers and lessees of the Defective Vehicles, including the Nationwide Class, were harmed by Defendants' failure to adequately recall all the Defective Vehicles in a timely manner and have suffered damages, including, without limitation, damage to other components of the Defective Vehicles caused by the defects described in this Complaint, the diminished value of the Defective Vehicles, the cost of modification of the dangerous and life-threatening Takata airbags, and costs associated with the loss of use of the Defective Vehicles.

239.   Defendants' failure to timely and adequately recall the Defective Vehicles was a substantial factor in causing the purchasers' harm, including that of the Nationwide Class.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment)

240.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

241.   Plaintiffs bring this count on behalf of members of the Nationwide Class.  In the event a nationwide class cannot be maintained on this claim, this claim is asserted by each statewide class.

242.   Defendants have received and retained a benefit from Plaintiffs and the Class and inequity has resulted.

243.   Defendants benefitted from selling Defective Vehicles for more than they were worth, at a profit, and Plaintiffs and the Class overpaid for their vehicles and have been forced to pay other costs.

244.   It is inequitable for Defendants to retain those benefits.

245.   As a result of Defendants' conduct, the amount of their unjust enrichment should be disgorged, in an amount according to proof.

## EIGHTH CAUSE OF ACTION

**(Violation of the Michigan Consumer Protection Act,**

**Mich. Comp. Laws §§ 445.901–.922)**

246.   Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint, as if fully set forth herein.

247.   Michigan Plaintiffs bring this count on behalf of the Michigan Class in the event that the Michigan Class cannot maintain their Second, Third, or Fourth Causes of Action.

248.   Michigan Plaintiffs and Class members are "persons" under the Michigan Consumer Protection Act ("MCPA").  Mich. Comp. Laws § 445.902(1)(d).

249.   Defendants were each "persons" engaged in "trade or commerce" under the MCPA.  Mich. Comp. Laws § 445.902(1)(d), (g).

250.   The MCPA prohibits any "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."  Mich. Comp. Laws § 445.903(1).

251.   Defendants' conduct, as alleged in the preceding paragraphs, constitutes at least the following unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce:

    a.   "Representing that [the Defective Vehicles and/or Takata airbags] have . . . approval, characteristics, . . . uses, [or] benefits . . . that they do not have . . . ."  Mich. Comp. Laws § 445.903(1)(c).

61

b.  "Representing that [the Defective Vehicles and/or Takata airbags] are of a particular standard, quality, or grade . . . [when] they are of another."  Mich. Comp. Laws § 445.903(1)(e).

c.  "Advertising or representing [the Defective Vehicles and/or Takata airbags] with intent not to dispose of those goods . . . as advertised or represented."  Mich. Comp. Laws § 445.903(1)(e).

d.  "Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer."  Mich. Comp. Laws § 445.903(1)(s).

e.  "Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  Mich. Comp. Laws § 405.903(1)(bb).

f.  "Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."  Mich. Comp. Laws § 405.903(1)(cc).

252.  Defendants violated, and continue to violate, the MCPA by engaging in at least the following conduct:

a.  Representing that the Defective Vehicles and/or Takata airbags meet safety standards, have safety characteristics, can be safely used during the normal operation of a vehicle, and provide safety benefits when they do not.

b.  Representing that the Defective Vehicles and/or Takata airbags meet regulatory and Defendants' own safety standards, and they are of a suitable quality or grade when they are not.

c.  Advertising, but not intending to provide, Defective Vehicles and/or Takata airbags that are safe for use during the normal operation of a vehicle.

d.  Failing to reveal the defective and dangerous nature of the Defective Vehicles and/or Takata airbags, which constitute material facts known to Defendants but that could not be reasonably known to Plaintiffs or Class members, and which tend to mislead or deceive Plaintiffs or Class members into purchasing, leasing, or retaining Defective Vehicles.

e.  Making representations or statements of fact about the safety of the Defective Vehicles and/or Takata airbags, which are material facts, and which tend to cause Plaintiffs and Class members to believe that the Defective Vehicles and/or Takata airbags are safe when they are not.

f.  Failing to reveal facts about the defective and dangerous nature of the Defective Vehicles and/or Takata airbags which were known to Defendants, and which were material to Plaintiffs or Class members' purchase, lease, or retention of Defective Vehicles in light of the Defendants' prior representations about the safety of the Defective Vehicles and/or Takata airbags.

253.  Defendants' acts and practices are unfair and unconscionable because their acts and practices offend established public policy, and because the harm Defendants have caused consumers greatly outweighs any benefits associated with Defendants' acts and practices. Defendants' conduct has also impaired competition within the automotive vehicles market and has prevented Plaintiffs and Class members from making fully informed decisions about whether to purchase, lease, or retain Defective Vehicles.

254.  Plaintiffs and the Class have suffered injury, including the loss of money or property, as a result of Defendants' unlawful, unfair, unconscionable, or deceptive conduct. Had Plaintiffs and Class members known about the defective and dangerous nature of the Defective Vehicles and/or Takata airbags, they would

not have purchased or leased their Defective Vehicles, would have paid less for them, or would not have retained them only to suffer continued risk of injury or death, as well as the diminution in value caused by the recalls.  Plaintiffs and the Class have therefore suffered a "loss" because of Defendants' violations of the MCPA alleged herein.

255.   All of the wrongful conduct alleged here occurred, and continues to occur, in the conduct of Defendants' business.

256.   Plaintiffs and the Class request that this Court enjoin Defendants from continuing the unlawful, unfair, unconscionable, or deceptive practices; require Defendants to repair Plaintiffs' and the Class members' Defective Vehicles to completely eliminate the airbag defects; reimburse damages suffered by Plaintiffs and each Class member as the result of Defendants' unlawful, unfair, unconscionable, or deceptive trade practices; award reasonable attorneys' fees; and provide other relief appropriate under the MCPA.

257.   Plaintiffs and the Class also seek punitive damages against Defendants because they carried out their reprehensible conduct with willful and conscious disregard of the rights and safety of others.  Defendants intentionally, willfully, and repeatedly misrepresented the reliability and safety of the Defective Vehicles, and continued to conceal material facts that only they knew, even while numerous innocent victims were being seriously injured and killed as a result of Defendants' conduct.  Defendants' unlawful conduct constitutes malice, oppression, and fraud justifying punitive damages.

## **PRAYER FOR RELIEF**

Plaintiffs, on behalf of themselves and the Class, request the Court to enter judgment against Defendants, jointly and severally, as follows:

A.      An order certifying the proposed Class, designating Plaintiffs as the named representatives of the Class, and designating the undersigned as Class Counsel;

B.      A declaration that the airbags in Defective Vehicles are defective;

C.      A declaration that Defendants are financially responsible for notifying all Class members about the defective nature of the Defective Vehicles;

D.      An order enjoining Defendants to desist from further deceptive distribution, sales, and lease practices with respect to the Defective Vehicles, and directing Defendants to permanently, expeditiously, and completely repair the Defective Vehicles to eliminate the defective airbags;

E.      An award to Plaintiffs and the Class of compensatory, exemplary, and statutory penalties, damages, including interest, in an amount to be proven at trial;

F.      A declaration that Defendants must disgorge, for the benefit of Plaintiffs and the Class, all or part of the ill-gotten gains they received directly or indirectly, from the sale or lease of the Defective Vehicles, or make full restitution to Plaintiffs and Class members;

G.      An award of attorneys' fees and costs, as allowed by law;

H.      An award of pre-judgment and post-judgment interest, as provided by law; and

I.      Such other relief as may be just and equitable under the circumstances.


Date:  December 4, 2014          By: /s/ John P. Kristensen
                                         Richard B. Drubel (*pro hac vice* pending)

                                         Richard B. Drubel
                                         rdrubel@bsfllp.com
                                         Jonathan R. Voegele
                                         jvoegele@bsfllp.com
                                         BOIES, SCHILLER & FLEXNER LLP
                                         26 South Main Street
                                         Hanover, NH 03755
                                         Telephone: (603) 643-9090
                                         Facsimile: (603) 643-9010

John P. Kristensen (SBN 224132)
john@kristensenlaw.com
KRISTENSEN WEISBERG, LLP
12304 Santa Monica Blvd., Suite 100
Los Angeles, CA 90025
Telephone: (310) 507-7924
Facsimile: (310) 507-7906

*Attorneys for Plaintiffs*

1

## **DEMAND FOR JURY TRIAL**

2

3          Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs

4    demand a jury trial as to all issues triable by jury.

5
    Date:  December 4, 2014                    By: /s/ John P. Kristensen
6                                                 Richard B. Drubel (*pro hac vice* pending)

7
                                                 Richard B. Drubel
8                                                rdrubel@bsfllp.com
                                                 Jonathan R. Voegele
9                                                jvoegele@bsfllp.com
                                                 BOIES, SCHILLER & FLEXNER LLP
10                                               26 South Main Street
                                                 Hanover, NH 03755
11                                               Telephone: (603) 643-9090
                                                 Facsimile: (603) 643-9010
12

13                                               John P. Kristensen (SBN 224132)
                                                 john@kristensenlaw.com
14
                                                 KRISTENSEN WEISBERG, LLP
15                                               12304 Santa Monica Blvd., Suite 100
                                                 Los Angeles, CA 90025
16                                               Telephone: (310) 507-7924
                                                 Facsimile: (310) 507-7906
17

18                                               *Attorneys for Plaintiffs*

19

20

21

22

23

24

25

26

27

28